

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

CP:TK
F.#2010R01359/NY-NYE-635H

*271 Cadman Plaza East*

*Brooklyn, New York  11201*

October 5, 2010

**By Hand Delivery and ECF**

The Honorable John Gleeson
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

              Re:  United States v. Henry Butler
                   10-CR-560 (S-1) (JG)

Dear Judge Gleeson:

        At 5:00 p.m. yesterday, the government was informed by
defense counsel that at today's status conference, the defendant
Henry Butler will request a detention hearing and offer a bail
package in support of his application to be released from
custody.  The government respectfully submits this letter in
opposition to the defendant's proposed bail package.  For the
following reasons, the defendant should remain in custody.

Procedural Background

        Following a long-term investigation by the Drug
Enforcement Administration ("DEA"), in July 2010, a grand jury
sitting in this district returned an indictment against the
defendant, charging him with violating 21 U.S.C. § 846.  On
August 3, 2010, DEA and other law enforcement agents arrested the
defendant in Ventura County, California.  The defendant was
subsequently arraigned in the Central District of California, and
on August 9, 2010, a detention hearing was held before the
Honorable Stephen J. Hillman.  Following the hearing, at which
the defense offered the property of the defendant's mother as
collateral, Judge Hillman denied the defendant's application,
agreeing with the government that the defendant posed a serious
risk of flight.  On October 1, 2010, a grand jury sitting in this
district returned a superseding indictment against the defendant,
charging the additional violations of 18, U.S.C., §§ 922(g)(1)
and 924(c)(1)(A)(I).

Discussion

        Under relevant provisions of the Bail Reform Act, 18
U.S.C. §§ 3141 et seq., the defendant should remain in custody
pending trial.  Where there is probable cause to believe that a
person has committed an offense under Title 21, U.S.C., Section
846, a rebuttable presumption exists in favor of detention.
See 18 U.S.C. § 3142(e).  In this context, the court must
consider a number of factors to determine whether there are
conditions of release which will reasonably assure the appearance
of the person as required.  These factors include: 1) the nature
and circumstances of the offense; 2) the weight of the evidence
against the defendant; 3) the history and characteristics of the
defendant, including the defendant's past conduct and whether he
was on probation at the time of the offense; and 4) whether the
defendant poses a danger to the community.  See 18 U.S.C.
§ 3142(g).  In the instant case, the combination of this
presumption and the aforementioned factors warrant detention.

I.    Nature of the Charges and Weight of the Evidence

        A.    The Government's Evidence

        Pursuant to an investigation into the origin of several
shipments of cocaine that were sent from California to the New
York metropolitan area, DEA agents learned that the defendant was
the supplier of the cocaine sent in those packages.  While
conducting surveillance of the defendant in Los Angeles,
California in July 2010, agents observed the defendant, on
consecutive days, drive individuals to stores that offered
overnight shipping.  In each case, the individual driven by the
defendant attempted to mail a package that contained cocaine.
These packages were seized and revealed a total of five kilograms
of cocaine when opened.  Based on this evidence, as well as that
provided by confidential sources, shipping records and additional
evidence, the government believes that the defendant is
responsible for shipping at least 50 kilograms of cocaine
throughout the course of the instant conspiracy.[1]

_____

        [1] In addition, on July 28, 2010, the defendant was stopped
near Barstow, California by officers of the California Highway
Patrol ("CHP")and found in possession of $96,000 cash.  Although
the money was in a bag the defendant claimed was his, he denied
ownership of the money and it was accordingly seized.

On August 3, 2010, when law enforcement agents attempted to pull the defendant's vehicle over and arrest him pursuant to the instant indictment, the defendant initially stopped his vehicle, but then sped away as officers approached his car.  After pursuit, the defendant was finally apprehended, but only after tossing approximately 60 -70 MDMA pills out of the window of his vehicle (which had to be safely removed from the sidewalk in a residential area).  Later, a search of the defendant's home revealed approximately 100 more pills.

Following his arrest, and after making incriminating statements to DEA agents, the defendant asked the agents whether he might be able to return to his home.  Additionally, the defendant was permitted to call his attorney and consult with him about the possibility of consenting to a search of his home.  Shortly thereafter, the defendant's wife was observed leaving the defendant's home in possession of a bag that she placed in her vehicle.  After leaving the residence, the defendant's wife was pulled over, at which time she told law enforcement officers that she was in possession of a pistol.  After consenting to a search of her vehicle, officers discovered in the bag, among other things, (a) a loaded .9mm Beretta handgun with an additional loaded magazine; (b) an unloaded, Intratec P-9 "Assault Style" handgun, next to two high capacity magazines, one of which was loaded; and (c) boxes of .9mm and 45 caliber ammunition.  In addition, officers discovered approximately $45,000 in U.S. currency.  Photographs of the items seized in the vehicle are attached hereto.  Following her arrest, the defendant's wife admitted to retrieving the guns from inside of the house, and stated that one reason she did so was because she knew her husband was on probation and not permitted to possess such weapons.[2]

B.    The Potential Penalties

Because the charges involve more than five kilograms of cocaine, the defendant faces a minimum prison term of ten years and as much as life in prison.  Given the amount of cocaine involved in the charged conspiracy, as well as the defendant's use of firearms in furtherance of that conspiracy, the government estimates that the resulting Guidelines range for the defendant will be 295 to 353 months (which includes the reduction for acceptance of responsibility).

_____

[2] Additionally, a search of the residence revealed another high-capacity magazine.

II.   <u>Analysis of Factors 1 & 2</u>

        When considering the serious penalties the defendant
faces if convicted in light the government's strong evidence, the
defendant has an overwhelming incentive to flee if released on
bail.  However, the high likelihood that the defendant will flee
is not just speculative.  In this very case, the defendant has
evidenced a willingness to evade justice.  First, he did so by
trying to elude the police that first attempted to pull him over
and by discarding the MDMA pills in the process.  In addition,
his request to return to his home – that contained drugs and an
arsenal of weapons – without mentioning these items to the agents
with whom he made the request, can also fairly be viewed as an
attempt to obstruct justice.  Moreover, the actions of the
defendant's wife (with whom he would reside if given bail)
suggest a collusion between the two to evade probationary
supervision and avoid additional charges in the instant case.  It
should also be noted that the amount of cash seized thus far from
the defendant and his wife (almost $150,000) demonstrates that
the defendant has the means to evade justice and live comfortably
while doing so.  Therefore, the first two factors militate
heavily in the government's favor and do not overcome the
presumption that the defendant should be detained.

III.  <u>History and Characteristics of the Defendant</u>

        A.   The Defendant's History of Non-Compliance with
             <u>Court- Ordered Supervision</u>

        The Pretrial Services Report ("PSR") notes that the
defendant has a "long history of noncompliance" with previous
court appearances and with supervision.  (PSR ¶ 3).  The
defendant's criminal history report bears out Pretrial's
concerns.  The defendant was arrested for driving with a
suspended license in August 1988.  Less than two months later,
and while out on bail, he was arrested for grand theft auto.  In
1988, he was sentenced principally to two years' of probation on
these cases.  (PSR ¶ 5).

        In July 1989, while on probation, the defendant again
was arrested for driving with a suspended license in California.
(PSR ¶ 5).  A month later, while out on bail and on probation, he
was arrested in Little Rock for various narcotics offenses.  A
failure to appear warrant was issued in the drug case.  (PSR
Report ¶ 7).  While out on bail on those cases, and still on
probation, he was arrested in California for driving with a
suspended license, again, in 1990.  (PSR ¶ 5).  He was released
on bail, but less than three months later, he was arrested for

grand theft auto and driving without a license.  (Id.).
Eventually he was sentenced to probation for the driving and
theft offenses.  However, his warrant in Little Rock remains
outstanding.  (PSR ¶ 5).

        In February 1999, defendant was sentenced to 36 months'
probation on a trespassing charge.  (PSR ¶ 6).  In 2001, while on
probation for the trespassing case, he was arrested for shooting
at an inhabited dwelling or car.  In 2002, he was sentenced to
three years' probation and 20 days in jail on the shooting case.
(PSR ¶ 7).
        In 2005, about three months after completing probation,
the defendant was arrested on various drug and firearm offenses
in Gardena, California.  (PSR ¶ 8).  In August 2005, he received
an 18 month diversion of judgment.  (Id.)

        Then, in September 2007, the defendant was arrested for
firearm possession.  Specifically, the defendant attempted to
bring a loaded firearm into the Superior Court building in Los
Angeles.  This firearm was discovered by court officers as the
bag in which it was secreted passed through the metal detector.[3]
In 2008, he was sentenced to 3 years probation and 45 days in
jail for this offense.  He was also ordered not to possess any
additional firearms.  (PSR ¶ 6).

        From this history, it is apparent that the defendant
has no qualms about committing new crimes while out on bail or
under court supervision.  Most glaringly, he committed the
instant offense - wholesale cocaine distribution and possession
of multiple firearms and a large cache of ammunition - while on
probation in California.  (PSR ¶ 4).  Notably, he "attempted to
keep attention away from his Probation Officer by reporting yet
still involved in the alleged offense."  (PSR ¶ 11).  He also has
a demonstrated history of courts having to issue warrants in an
effort to get him to appear in court.  Indeed, as noted above,
there remains an outstanding warrant for his drug arrest in
Little Rock.  (PSR ¶ 7).

        Further, the defendant has a history of failing to
comply with other conditions of probation.  A specific condition
of probation was that he not possess any dangerous weapons, a
condition he clearly violated in the instant matter.  (PSR ¶ 4).
The defendant also was generally noncompliant with other,
important probation conditions.  For example, he refused to

_____

        [3] I learned this information in documents provided to me by
the Los Angeles County District Attorney's Office.

provide proof of employment and income to his supervising officer
in California.  (Id.).  In addition, the defendant would ask his
probation officer for permission to travel, but refuse to provide
supporting document as to his reasons for traveling.  (Id.).
Notably, his probation officer is "opposed to bail for this
defendant."  (Id.).

B.   Defendant's Unverified Employment History

More red flags are raised by the fact that Pretrial
received conflicting and unverified information about the
defendant's employment history.  For example, the defendant
claimed to be a self-employed subcontractor for "Dotta Clothing"
in marketing their products, yet he was unable to provide a
telephone number for a single individual who could verify that
fact.  (PSR ¶ 3).  His claims appear to be contradicted by his
own sister, who stated that the defendant owns a dance studio and
is in the "promotion" industry.  (Id.).

Notably, the defendant has a history of lying about his
employment, and refusing to document his employment while on
probation for his prior felony in California.  As noted above,
according to his supervising probation officer, the defendant
"avoided providing proof of employment, and never produced proof
of income" as requested.  (PSR ¶ 4).

In sum, this history of warrants, obfuscation, non-
compliance with court supervision and commission of new crimes
while out on bail and/or on probation demonstrates that the
defendant will not follow the Pretrial Services' directives if
released in this case.

IV.  Danger to the Community

The nature of the weapons and the amount of ammunition
the defendant possessed at the time of his arrest leads to the
inescapable conclusion that he is a danger to the community.  The
fact that the defendant possessed an "Assault-Style" semi-
automatic weapon along with three high-capacity magazines is
deeply troubling.  Guns and ammunition of this nature are not
used for hunting and well exceed anyone's idea of a reasonable
precaution taken in defense of one's home.  Rather, these guns
are used for shootouts in drug wars that are unfortunately all
too common.  How the defendant had access to such weapons (while
on probation) is unknown to the government, and there is no
amount of monitoring that can ensure that the defendant will be
unable to access additional weapons.  When considering the
defendant's previous conviction for bringing a loaded firearm to

a courthouse, it is evident that the defendant feels that having a firearm is integral to his daily existence and that he knows few limits on his ability to possess them and/or bring them into public spaces.  In light of these facts, the defendant's dangerousness to the community renders him ineligible for bail.

Conclusion

        Based on the foregoing, there is no condition or combination of conditions that can secure the defendant's future appearance in court.  Accordingly, the government strongly opposes defendant's release on bail and requests that he remain in custody.


                        Respectfully submitted,

                        LORETTA E. LYNCH
                        United States Attorney

                   By:  _____/s_____
                        Todd Kaminsky
                        Assistant U.S. Attorney
                        718-254-6367

cc:  Clerk of the Court (JG)
     Jason Russo, Esq.