

*U.S. Department of Justice*

*United States Attorney*
*Eastern District of New York*

---

SLT:UAD
F.#2011R00674/NY-NYE-635H

*271 Cadman Plaza East*
*Brooklyn, New York  11201*

October 15, 2012

**By Hand Delivery and ECF**

The Honorable John Gleeson
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

          Re:  United States v. Henry Butler
               Criminal Docket No. 10-560 (S-2)(JG)

Dear Judge Gleeson:

          The government respectfully submits this letter, pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e), to apprise the Court of the substantial assistance provided by the defendant Henry Butler, and to permit the Court, in its discretion, to impose a sentence below the statutory minimum sentence and the applicable advisory United States Sentencing Guidelines ("Guidelines") range.  Butler is scheduled to be sentenced by Your Honor on October 19, 2012, at 3:30 p.m.

I.   Background

          Butler was arrested in California on August 3, 2010. On March 17, 2011, he pleaded guilty pursuant to a cooperation agreement to conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846, and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  (Presentence Investigation Report ("PSR") ¶ 1).  As stated in the PSR, based on a total offense level of 40 and a Criminal History Category of III, Butler's Guidelines range of imprisonment is 360 months to life. (PSR ¶ 138.)

I.   The Rosemond Narcotics Trafficking Enterprise

          Butler was a cocaine supplier for the Rosemond Enterprise (the "Enterprise"), which was a large-scale, bi-coastal narcotics-trafficking organization headed by James Rosemond.  (PSR ¶ 5.)  Between at least 2006 to 2011, the Enterprise shipped cocaine from Los Angeles, California, to New York City for further distribution.  Id.  Drug proceeds were then

shipped back to Los Angeles for the purchase of additional cocaine. Id. The Enterprise used a variety of shipping methods as part of its operations, including using Federal Express to ship boxes of mustard-covered cocaine, using a specialized shipping company to ship cocaine and money concealed in music equipment cases, and using a flatbed company to ship cocaine concealed in cars. (PSR ¶¶ 2-3.) During the course of the conspiracy, the Enterprise distributed hundreds of kilograms of cocaine and laundered millions of dollars of drug revenues. Id.

II. Butler's Involvement

Butler began supplying Rosemond with cocaine in or around 1995. (Tr. 804-806.) He had a preexisting business relationship with Rosemond due to their work in the music industry, and their business relationship eventually evolved to include narcotics transactions. Id. From 1995 until his arrest in August 2010, Butler supplied Rosemond with cocaine "sporadically" depending upon factors such as the Enterprise's needs, Butler's prices, and the state of Butler and Rosemond's friendship. (Tr. 807:4-20; 1983:22-25; 1984:1-8.) In the 1990s, when Rosemond purchased cocaine from Butler, he purchased anywhere between two and ten kilograms at a time.[1] (Tr. 808:15-20.) Between 2007 and 2010, when Rosemond purchased from Butler, Butler typically sent between five and thirty kilograms of cocaine at a time. (Tr. 822:10-19.)

In addition to supplying cocaine for Rosemond, between 2005 and 2010, Butler also shipped cocaine to an individual in Philadelphia named Leonard Bostic.[2] Between the fall of 2009 and the spring of 2010, Butler also occasionally supplied two to five kilograms of cocaine at a time to Enterprise members Muhammad Stewart and Rosemond's brother, Kesner Rosemond. Butler's transactions with Stewart and Kesner Rosemond were not part of the Enterprise's cocaine trafficking activities but were for Stewart and Kesner Rosemond's personal gain. (Tr. 851:3-18.) In all, Butler is responsible for supplying at least 150 kilograms of cocaine. (PSR ¶ 18.)

---

[1] Between 2007 and 2011, the Enterprise had four cocaine suppliers, including Butler and Darron Lamont Bennett. (Tr. 1955:9-14.) During this time, Bennett was the primary source of supply. (Tr. 451:4-15; 1984:1-20.)

[2] Bostic and Butler's wife Leah Butler have children together from an earlier relationship.

3

When Butler was arrested on August 3, 2010, his wife, Leah Butler, was stopped for a traffic infraction, and was found to be in possession of cash, MDMA tablets and two handguns, all of which belonged to Butler. (PSR ¶ 14; Tr. 795-96.) At that time, Butler had a prior felony conviction that was punishable by a term of imprisonment for more than one year and was not allowed to possess firearms.[3]

## III. Butler's Cooperation

Butler began cooperating with the government's investigation in December 2010. The government participated in many meetings with Butler and found him to be pleasant, forthright and contrite. He did not try to minimize his culpability, and it seemed that, once he decided to cooperate, he accepted full responsibility for his actions. The government found the information provided by Butler highly corroborated by information provided by other cooperating witnesses and other evidence. Butler also appeared sincere about his desire to change his life.

### a. Information About Rosemond Enterprise

Over the course of several months starting in December 2010, Butler met with the government on numerous occasions and provided extensive information about his drug trafficking activities generally and his dealings with Rosemond specifically. Butler's cooperation against Rosemond was significant because he was the only cooperating witness who could provide insight into the Enterprise's operations from the standpoint of a supplier. To this end, Butler testified at trial that Rosemond came out to Los Angeles and personally purchased cocaine from Butler on at least two occasions. (Tr. 813:13-25; 814-15.) This testimony was of particular importance given that Rosemond often had his underlings handle the day to day receipt and distribution of drugs, and Rosemond himself did not typically touch the narcotics.

Butler also provided critical testimony about how many kilograms of cocaine he had supplied the Enterprise. He testified that, between the fall of 2009 and August 2010 alone, he supplied Rosemond with approximately 150 kilograms of cocaine. (Tr. 865-67.) In arriving at this number, Butler was able to lay out for the jury the various shipments he sent during this period and the amount of cocaine in each shipment. No doubt, Butler's

---

[3] Butler was convicted in September 2007 of carrying a loaded firearm in public. (PSR ¶ 53.)

4

testimony helped the jury conclude that Rosemond's Enterprise involved at least 150 kilograms of cocaine, a finding which triggered a mandatory life sentence for Rosemond.

### b. Information About Lamont Bennett

In addition to providing information about Rosemond, Butler provided information regarding another Enterprise supplier, Lamont Bennett, who Butler has known since childhood. (Tr. 817:11-12.) Although Butler was not aware that Bennett also supplied cocaine to the Enterprise, he did know that Bennett was a cocaine dealer. (Tr. 817:11-12.)

Butler detailed how, in 2005, Bennett taught Butler how to package cocaine in mustard and vacuum-sealed bags for out-of-state shipping and also paid Butler to package Bennett's cocaine for him. (Tr. 816:17-25; 817:1-10,22-25; 818:16-25-19:1-16.) As Bennett's packager from 2005 to 2006, Butler described for the government how Bennett ordered customized boxes, made to look like electronics equipment boxes, which were then used to ship cocaine to Bennett's customers.[4] (Tr. 821:2-13.) This information was of particular relevance in the government's prosecution of Bennett, because it allowed the government to demonstrate, based on the type of packaging found during drug seizures, that Bennett was the source of supply of much of the Enterprise's cocaine. Faced with this evidence, on April 19, 2012, Bennett pleaded guilty pursuant to a plea agreement to cocaine distribution in violation of 18 U.S.C. § 841(a).

### c. Threats to Butler's Safety

It is also important to note that Butler cooperated with the government in the face of significant risk to his and his family's safety. Following Butler's first proffer session on December 15, 2010, the notes his New York-based attorney took during the proffer ended up in the hands of the very individuals against whom Butler was trying to cooperate – James and Mario Rosemond. (See Tr. 482-84.) Following the dissemination of these notes, Rosemond embarked on a campaign of intimidation to try and prevent Butler from cooperating. Specifically, he sent Enterprise member Khalil Abdullah to confront Butler's New York-based attorney on multiple occasions about Butler's cooperation, sent a private investigator and his own attorney Jeffrey Lichtman

---

[4] Although Butler packaged Bennett's cocaine for him, he did not typically mail the packages to the customers. (Tr. 819:18-22.)

to question Butler in jail, and personally called Butler's wife to ask why Butler had proffered.

Despite these efforts on the part of Rosemond to prevent Butler from cooperating, Butler continued to meet with the government and eventually testified at Rosemond's trial in May 2012. To that end, Butler testified candidly, and his accounts of his dealings with the Enterprise no doubt played an important role in securing the conviction of Rosemond on all charged counts, including for obstruction of justice.

IV. Conclusion

For the foregoing reasons, the government moves pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e) to permit the Court, in its discretion, to impose a sentence below the statutory minimum sentence and applicable Guidelines range for Henry Butler.

LORETTA E. LYNCH
United States Attorney

By:   _____/s/_____
Una A. Dean
Assistant U.S. Attorney
718-254-6473

cc:   Clerk of the Court (JG)(by ECF)
Jason Russo, Esq. (by ECF)